IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 1:13-CR-298 |
| v. | ) | |
| | ) | The Honorable Liam O'Grady |
| STEPHANIE OLEAN CHAPMAN, | ) | |
| | ) | Sentencing Date:  Jan. 23, 2014 |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Dana J. Boente, Acting United States Attorney, and Stacey K. Luck, Special Assistant United States Attorney, and Michael J. Frank, Assistant United States Attorney, hereby files this Position of the United States With Respect to Sentencing in the instant case.   The government has reviewed the Presentence Investigation Report ("PSR") and concurs with the findings of the Probation Office, including the determination that the applicable Sentencing Guidelines range is 235-293 months' imprisonment.   The United States respectfully submits that a sentence within the applicable Sentencing Guidelines range appropriately accounts for each of the factors set forth in Title 18, United States Code, Section 3553(a), and requests the Court impose such a sentence.

I.      **Evidence at Trial**

On July 11, 2013, the grand jury returned a three-count indictment against the defendant. Count One charged the defendant with conspiracy to commit sex trafficking of a child, in violation of Title 18, United States Code, Section 1594(c).   Count Two charged the defendant with sex trafficking of a child, in violation of Title 18, United States Code, Sections 1591(a), 1594(a), and 2.  Count Three charged the defendant with interstate transportation of a minor for

1

purposes of prostitution, in violation of Title 18, United States Code, Sections 2423(a) and 2.  On October 15, 2013, the trial commenced.  The evidence at trial was as follows:

On February 27, 2013, the victim, a 15-year-old girl, met the defendant and the co-defendant, Ronnie Holmes, for the first time.  The victim was outside of her father's apartment going to meet some friends; Holmes was in the parking lot of the apartment complex waiting for his girlfriend, the defendant, to come outside.  Holmes struck up a conversation with the victim and then quickly introduced the victim to the defendant.  When the defendant met the victim for the first time, she immediately told the victim, "well, we are going to have to change your name."  The defendant's business-like approach to the victim never changed.

Within hours of meeting the victim, the defendant and Holmes had recruited the victim to act as a prostitute and began to text potential clients to have sex with the victim.  During the following two weeks, the defendant and Holmes taught the victim the rules regarding how to behave with customers, took explicit photographs of the victim, posted the photographs online to solicit business for the victim, and drove the victim to numerous appointments in Virginia, Maryland, and the District of Columbia where the victim had sex with men for money.  The defendant and Holmes then took half of the money the victim was paid.

Notably, at the time the defendant and Holmes met the victim, neither the defendant nor Holmes were employed and both were homeless.  The defendant spent some nights with friends and Holmes would sleep in the defendant's car.  They were nearly out of money and had no way to spend their nights together until they found another source of income – and that source of income was the victim.  The decision to find and sell the body of another person was not new to the defendant or Holmes.  Previously, the defendant had acted as a prostitute herself and both the defendant and Holmes had helped other women act as prostitutes by posting images of the

women online.  At the time the defendant and Holmes met the victim, Chapman decided she no longer wanted to work as a prostitute herself and because Chapman and Holmes did not have any other women working for them, they needed to find a new girl to prostitute.

Importantly, the defendant's role was crucial to the conspiracy to prostitute the victim. Indeed, without the defendant it is unlikely the co-defendant, alone, would have been able to pull off the scheme.  This is because the defendant had: (1) a car, (2) a license and ability to drive, and (3) a computer.  The car was necessary to driving the victim to appointments as most of the appointments occurred at the customers' locations.  The defendant was necessary to drive the car because neither Holmes nor the victim knew how to drive.  Finally, the defendant's computer was necessary because a majority of the customers were located through the website Backpage.com.  Without the defendant's computer, the photos the defendant took of the victim and the advertisements that the defendant helped to create would not have been posted and there would not have been as many men paying to have sex with the victim.

During the trial, the defendant testified and admitted that:

- she knew from the second day that the victim would be prostituted;

- she drove the victim to meet with men who were going to pay the victim for sex;

- she gave the victim condoms; and

- she took pictures of the victim to be used for advertisements.

Although the defendant admitted a significant amount, her testimony was contradicted on a number of occasions.  For example:

- The defendant claimed she learned on the second day that the victim would be prostituted; however, the victim testified that the first night she met the defendant,

the defendant immediately told her that they were going to change her name thereby indicating the defendant knew the plan to prostitute the victim from the beginning.  Further, the victim testified that both the defendant and Holmes texted and talked to potential customers the first night she was with them.  This was corroborated by the testimony of at least one witness who indicated he spoke with a woman who was not the victim on the night of February 27, 2013 – the first night the victim was with the defendant and Holmes.

- The defendant claimed she only texted one client, but that date never happened; however, as described above, the defendant's testimony was contradicted by the victim and at least one other customer.  The defendant's statement also was not credible considering the numerous text messages to potential customers that were located on a telephone used by the defendant.  These messages were interspersed with personal text message that were sent and received by the defendant.

- The defendant claimed she did not assist with the posting of the online advertisement; however, the victim testified that it was the defendant who picked out the photographs that were used in the advertisement.

- The defendant claimed she did not receive any money from the prostitution; however, the victim testified that the defendant and Holmes took half of the proceeds.  The victim also testified that she was required to pay for the hotel rooms where the defendant and Holmes slept and paid for food for the defendant and Holmes.  In addition, the victim, gave money to the defendant for her car and gas.

4

One item the defendant did not discuss was whether she felt any remorse or concern for the victim despite the knowledge that the victim testified to being raped.  As the victim testified, the customer raped her as she cried for him to stop.  After it was over, the victim took a long shower while she cried.  When she encountered the defendant, she told the defendant that she felt gross and that she didn't want to be a prostitute anymore; the defendant was unmoved and simply told her that she should not feel gross and encouraged the victim to continue to be a prostitute.

On October 17, 2013, after seeing and hearing all of the evidence discussed above and more, the jury found the defendant guilty of all counts.

## II.      Sentencing Standards

Although the Sentencing Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing."  *United States v. Booker*, 125 S. Ct. 738, 767 (2005).  "[A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines.  Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence."  *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).   Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to promote respect for the law, provide just punishment, deter criminal conduct, protect the public, and avoid unwarranted sentencing disparities.  18 U.S.C. § 3553(a).

## III.     Sentencing Guidelines Calculation

The United States concurs in the Probation Office's Sentencing Guidelines calculation. The Base Offense Level for Sex Trafficking of a Juvenile is 30.  U.S.S.G. § 2G1.3(a)(2).  The

5

offense level is increased by two levels because the defendant influenced a minor to engage in prohibited sexual conduct.   U.S.S.G. § 2G1.3(b)(2)(B).   The offense level is increased an additional two levels because the offense involved the use of a computer.   U.S.S.G. § 2G1.3(b)(3)(B).   The offense level is increased an additional two levels because the offense involved the commission of a sex act.   U.S.S.G. § 2G1.3(b)(4)(A).   The offense level is further increased an additional two levels because she willfully obstructed the prosecution by providing false testimony during trial.   As a result, the defendant is subject to a Total Offense Level of 38. The defendant's criminal history is a Category I.   Accordingly, the Guidelines range is 235-293 months' imprisonment.

**IV.     Sentencing Recommendation:  A Sentence within the Sentencing Guidelines Range is Reasonable and Appropriate**

The government submits that a sentence between 235-293 months would be sufficient, but not greater than necessary, to account for the factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense, (2) the need to provide a just punishment for the crime, (3) the need to afford adequate deterrence for such conduct; and (4) the need to avoid unwarranted sentencing disparities.

**A. A Guidelines Sentence is Reasonable and Appropriate Given the Nature and Circumstance of the Offense.**

One of the most significant aspects in this sentencing calculus is the nature and circumstances, as well as the seriousness, of the underlying offense:  the prostitution of Jane Doe when she was 15 years old.  The defendant (and her co-defendant) instructed her how to have sex with strangers, they encouraged her to have sex without a condom, they arranged for her to meet with multiple strangers to have sex, they posted sexually suggestive photographs of her online, and they used the money earned by the victim to pay for a place for them to stay.

As outlined by the victim in her written statement, the impact of the defendant's actions will be profound and long-lasting. As will the impact of being forced, by at least one of the customers, to have sex against her will. As the victim highlighted, she continues to have flashbacks of the night she was raped, she has anxiety when she sees older men, and she is still concerned that she may not be able to have children or get married because she could be infected with H.I.V. The trauma that the victim will endure as a result of the defendant's actions will last the rest of her life. It is appropriate and just for the defendant's sentence to reflect the impact of her crime on the victim.

**B. A Sentence with the Sentencing Guidelines Range is a Just Punishment and Affords Adequate Deterrence.**

A guidelines sentence is a just punishment and will deter the defendant and others from similar acts. First, a sentence between 235-293 months' imprisonment is a just punishment for the defendant who robbed the victim of her innocence and within hours of meeting her changed the course of her life forever. Such a sentence is an appropriate punishment in contrast to the mental, physical, and emotional trauma the young victim of this case will endure and try to overcome throughout her lifetime.

Second, a guidelines sentence is an adequate deterrence for someone who may similarly consider preying upon a young, immature juvenile and involving them in the depraved and indifferent world of prostitution. The defense is sure to argue that this was a crime of opportunity, a chance meeting in a parking lot by Holmes and that this was not a larger prostitution ring that requires a sentence to send a message; however, this was not the defendant's first foray into exploiting women. The defendant previously engaged in prostitution activities herself and she also posted advertisements for other women. The defendant decided

that she did not want to sell her own body, but she was fine with helping other women to sell theirs and she not bothered by the young age of the women with whom she dealt.   As the evidence at trial reflected, at least one of the other images posted by the defendant was of a girl that prompted a report to Backpage.com because the girl appeared young.   That advertisement was reported to the National Center for Missing and Exploited Children (NCMEC) and taken down from the website.   The defendant, however, was undeterred.   She just worked with Holmes to find another victim – a vulnerable, impressionable, and easily controlled 15-year-old girl with no prior prostitution experience.   A sentence between 235-293 months' imprisonment could help deter the defendant from choosing to prey upon others (women or girls) in the future.   In addition, if there is one person who thinks twice about deciding to make money by selling the body of a young girl, then the sentence of this Court will resonate far beyond this courtroom.

Individuals such as the defendant (and his co-defendant) should not be allowed to conclude that juvenile prostitution is a viable business enterprise.   They should also not be allowed to suspect that if they are caught they will be punished lightly.   A sentence that is consistent with the Sentencing Guidelines provides a clear message what punishment awaits if they choose to prey upon our children.

**V.     Conclusion**

For the reasons set forth above, the United States respectfully submits that a sentence within the applicable Sentencing Guidelines range of 235-293 months' imprisonment is warranted and just.

Dana J. Boente
Acting United States Attorney

By:     _____/s/_____
Stacey Luck
Special Assistant United States Attorney (LT)
Michael J. Frank
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Facsimile: (703) 549-5201

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of January, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the counsel of record.

_____/s_____
Stacey Luck
Special Assistant United States Attorney (LT)
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  703-299-3700
Fax: 703-299-3980