1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
-------------------------------:
                               :
UNITED STATES OF AMERICA       :
                               :
                               :
    -vs-                       :    Case No. 1:13-cr-298
                               :
                               :
STEPHANIE CHAPMAN,             :
              Defendant.       :
                               :
-------------------------------:
```

SENTENCING HEARING

January 24, 2014

Before:   Liam O'Grady, USDC Judge

APPEARANCES:

Stacey K. Luck and Michael J. Frank,
Counsel for the United States

Alfred L. Robertson, Jr., Counsel for the Defendant

The Defendant, Stephanie Chapman, in person

2

1           THE CLERK:  Criminal case number 1:13-cr-298, the
2  United States of America versus Stephanie Chapman.
3           MS. LUCK:  Good morning, Your Honor.  Stacey Luck and
4  Michael Frank for the United States.
5           THE COURT:  All right.  Good morning.
6           MR. ROBERTSON:  Good morning, Your Honor.  Alfred
7  Robertson for Stephanie Chapman, who is present.
8           THE COURT:  All right.  This comes on for sentencing.
9  Are the parties ready to proceed?
10          MS. LUCK:  Yes, Your Honor.
11          MR. ROBERTSON:  Yes, Your Honor.
12          THE COURT:  All right.  Good morning, Ms. Chapman.
13          THE DEFENDANT:  Good morning, sir.
14          THE COURT:  All right.  I received the position
15  papers of both parties.  Mr. Robertson, any objections to the
16  presentence report, sir?
17          MR. ROBERTSON:  Well, yes, Your Honor.  The objection
18  is that the obstruction enhancement is not appropriate,
19  obviously.  But no other objections to it that we noticed.
20          THE COURT:  All right.  Ms. Chapman, have you had an
21  opportunity to go over the report?
22          THE DEFENDANT:  Yes, sir.
23          THE COURT:  Any other changes or corrections other
24  than Mr. Robertson noting the obstruction offense?
25          THE DEFENDANT:  No, sir.

3

1          THE COURT:  All right.  Have a seat then.

2          Do you want to be heard further on the obstruction

3    charge, Mr. Robertson?

4          MR. ROBERTSON:  No, Your Honor.  I think it is pretty

5    clear what our position is.  You heard her testimony, and her

6    testimony was pretty inculpatory, frankly.  I think that kind

7    of vitiates the obstruction enhancement.  The jury was out for

8    what, an hour-and-a-half?

9          So I don't think there was any obstruction involved

10   in that case.  I think the enhancement is inappropriate.

11         THE COURT:  All right.  Does the Government want to

12   be heard, Ms. Luck?

13         MS. LUCK:  As we outlined, Your Honor, the defendant

14   in fact did lie repeatedly during her testimony.  She lied

15   about the number of customers she contacted.  She lied about

16   the number of times she transported the victim.  She lied about

17   the money that she received and other remuneration.

18         For all those reasons, we do believe that the

19   obstruction enhancement is appropriate.

20         THE COURT:  All right.  Well, I'm not going to modify

21   the report.  I think the obstruction points are proper.  The

22   testimony that Ms. Chapman gave was in every respect rebutted

23   by empirical evidence either on her cell phone or through

24   records.  And her testimony was far less credible in other

25   respects than the victim's testimony, which was corroborated in

1    many, many different respects.

2              So I am not going to modify the Guideline.

3              And as a result, Ms. Chapman is a level 38.  She

4    doesn't receive acceptance.  She went to trial on a plea of not

5    guilty, was found guilty by the jury.

6              She is a Criminal History Category I.  And her

7    Guideline range is 235 to 293 months.

8              I have read the parties' positions on sentencing.

9    Ms. Luck, do you want to be heard at this time on sentencing?

10             MS. LUCK:  Yes, Your Honor, just briefly.

11             First.  As the Court has already noted, the evidence

12   in this case was in fact overwhelming.  It was the defendant

13   that drove.  It was the defendant's car.  It was the

14   defendant's license.  It was the defendant's computer.  It was

15   the defendant taking photographs.  It was the defendant posting

16   advertisements.  It was simply overwhelming that the defendant

17   was guilty in this case.

18             But more importantly, the evidence was also clear

19   that the defendant was not a mere bystander in this case as she

20   attempts to try and portray herself, is that it was her

21   co-defendant, Mr. Holmes, who was the one that was directing

22   this.

23             In fact, Your Honor, quite to the contrary, without

24   the defendant, this crime never occurred.  The victim never

25   would been transported.  The advertisements never would have

1    been posted.  In fact, if anything, the evidence in this case

2    shows that the defendant was perhaps more organized and more

3    manipulative than the co-defendant Ronnie Holmes.

4            Third.  It was against this backdrop that this was

5    not the first time that the defendant had prostituted young

6    women.  As the evidence showed, her telephone and computer

7    contained hundreds of images of other young women, one of which

8    had already been reported to NCMEC, the National Center for

9    Missing and Exploited Children.

10           It is against that backdrop the defendant had no

11   compunction about continuing to prostitute a 15-year-old girl,

12   who in every respect was a 15-year-old child.

13           Fourth.  Despite this overwhelming evidence, the

14   defendant remains defiant and unremorseful in her actions.

15   When she testified at trial, she did attempt to minimize her

16   actions, lied about the customers, lied about the text

17   messaging, lied about everything.

18           And this is consistent with the defendant's taped

19   jail calls in which she again proudly proclaims, they ain't got

20   nothing on me.  That simply just wasn't the case.

21           Next, to briefly touch on the defendant's sentencing

22   paper.  The Government acknowledges that the defendant is now

23   claiming that she was raped while she was in the military.  The

24   evidence simply does not exist.  The defendant is not a

25   credible accuser, just like she was not a credible person who

1   testified in this court.

2          As background, Your Honor, in that particular case

3   the alleged accuser, the alleged defendant in that case was the

4   defendant's former paramour.  After they broke up, she texted

5   that paramour's wife, and e-mailed him, and said that the

6   husband had raped her.  That was the allegation.  It was not an

7   outcry witness to a military officer, to a friend.  It was to

8   her paramour's wife.

9          And in that respect, there was nothing to corroborate

10  the defendant's allegations of rape.  And that's precisely why

11  there was no charges ever brought against the defendant for

12  rape or sexual assault in that case.

13         Finally, in this case the sentence requested in this

14  matter is substantial, but the Government believes it is

15  appropriate.  In this matter, the victim will have to endure

16  what happened to her for the rest of her life.  The time that

17  the Government is asking is a mere fraction in comparison to

18  that.

19         Thank you.

20         THE COURT:  Thank you, Ms. Luck.

21         Mr. Robertson.

22         MR. ROBERTSON:  This crime would have occurred

23  whether my client was involved or not.  Mr. Holmes has shown

24  that he has repeatedly resourceful.  He would have found

25  somebody else to drive him around.  He had other people driving

7

1    for him.  He had other people that helped him move things

2    around.

3          He would have put the ads on the computer anyway.  He

4    just simply would have used somebody else's computer.

5          My client was manipulated by Mr. Holmes as he found

6    her easy to manipulate.  Her mental health condition certainly

7    shows that she was in a fragile state and has been in a fragile

8    state for quite sometime.  She had a suicide attempt in 2012,

9    which is unattacked by the Government.

10          Though they do attack her allegation of rape.  It's

11    interesting when I hear that, when I hear that every time that

12    Ms. Chapman says, hey, look at me, this is something that has

13    happened to me, I need help, the Government doesn't believe

14    her.  The Government just steers it away.

15          Now, there was harm caused to this victim, I am not

16    trying to diminish that by any means.  But in the scope of this

17    case, this sentence, this 235 months, the bottom end of the

18    Guidelines that the Government is asking for, is wholly

19    inappropriate.  Ms. Chapman is a veteran that served in the

20    military.  She was diagnosed with post traumatic stress

21    disorder.  This is not something she made up.  She is diagnosed

22    with major depressive disorder, something else that she was not

23    making up.  She is on medication for those, to this day she is

24    on medication for those.

25          Both of those conditions leave her in a state where

1    she is more susceptible to manipulation.  And that manipulation

2    was done by Ronnie Holmes.  Ronnie Holmes put her into this

3    position.  She did things that she shouldn't have done because

4    of Ronnie Holmes.  This crime would have occurred without

5    Stephanie Chapman.  Ronnie Holmes would have found another way

6    to do it.

7            Essentially, Your Honor, looking at this case, my

8    client was convicted of a very serious crime, and the victim

9    was damaged because of the crime.  But my client's role is not

10   a 235-month sentence kind of role.

11           When the Government is asking for a 135-month

12   sentence -- now, this was before Ronnie Holmes did his motion

13   to withdraw his plea and change his attorney and motion to

14   recuse, they asked for 135 months for him.

15           235 months at the low of the Guidelines for Ms.

16   Chapman means that there is an eight-year trial tax when there

17   shouldn't be a trial tax at all.  And the Government happily

18   says, sure, a eight-year trial tax is perfectly appropriate.

19   Your Honor, it's just not.

20           And in this case, appropriately with what this Court

21   has sentenced other people to in different cases, as

22   demonstrated by the chart that was given by Mr. Holmes prior

23   counsel, this case is the type of case that should be at the

24   120-month mandatory minimum level.

25           Thank you.

1          THE COURT:  All right.  Thank you, Mr. Robertson.

2          Ms. Chapman, please come to the podium.  This is your

3    opportunity to tell me anything you would like to.

4          I need to remind you, you went to trial and you

5    testified at trial.  And you also have a right to appeal your

6    conviction.  And you have got ten days to do so.  And please

7    speak with Mr. Robertson about filing that notice of appeal in

8    the case.  And also, anything you say here in court today,

9    should the case be retried at a later date, anything you say

10   could be used against you in that future proceeding.

11         So go ahead now.

12         THE DEFENDANT:  There is nothing I can say that will

13   get me less than ten years, and nothing I can say to get me

14   home to my daughter and family and friends today.

15         So I will just start by saying, I found it in my

16   heart to forgive the prosecutors for how they have falsely

17   portrayed me and for creating such an outlandish story of what

18   they want you to believe happened in those two weeks because it

19   is their job.

20         After the trial I had time to think and forgive Jane

21   Doe for her misleading account of events, as it is clear she

22   had no chance against the intimidation and manipulation tactics

23   of the prosecution to support their case.

24         I know in my heart she was against testifying or

25   writing a letter that was untrue about me as she and I never

1   actually had more than half of the interactions or

2   conversations that were brought forth.

3        I am a sweet person and always treated her with

4   integrity.  I never forced her to do or to say anything.  We've

5   never had any need for disputes or had opportunities of

6   physical contact.  I pray her parents are finally giving her

7   the love and attention that she was lacking, really needed, and

8   deserves.

9        The prosecutors are correct of one thing, and that is

10  I will never in my entire life acknowledge that I sex

11  trafficked a minor because I absolutely never had a thought to

12  or knowingly commit.  I have been unjustly found guilty by law

13  of such a crime, but it doesn't make it true.

14        I am sure the prosecutors are chalking this up as a

15  win and content that their 99 conviction rate hasn't dropped on

16  paperwork, but what they don't understand is one day I will

17  again find freedom and I will live my happy life.

18        My family and friends all understand I am not guilty

19  of this, and they all stand by me.  My wonderful daughter loves

20  me uncontrollably, and I have done a great job of raising her

21  right.

22        For the time being, my responsibilities of raising

23  her is being stolen from me, and I can't wait to get out to be

24  with her again, supporting and loving her.  When I am free, I

25  will be there for her and her future children.

1          I apologize to my lawyer for being stubborn and

2   persistent, but it is my life, and I didn't want to just give

3   it up for nothing.  But I am thankful he did a good job, even

4   though yesterday he didn't remember if he filed any motions of

5   acquittal or appeal.

6          I apologize to you, Judge O'Grady, for having to make

7   such a harsh decision against an honorably disabled veteran, an

8   educated single mother since the age of 15.  My only naive

9   mistake was being around exploitive, manipulating, street-smart

10  hustlers.

11         I knew that taking it to trial, that there was a

12  chance of getting me ten years to life as my lawyer explained

13  months ago before he received any evidence or indictment.  I am

14  determined to stay strong through this difficult time and

15  remain my positive, smiling self as at this point it is all

16  mind over matter.

17         Thank you, Your Honor.

18         THE COURT:  No, please stay there at the podium.

19         Well, I can't say that I get you.  The evidence was

20  overwhelming that you participated with Holmes.  I don't have

21  any question that Holmes was in charge of this, that he is the

22  aggressor.  That you were in a terrible state during that time.

23  You have mental health issues which are serious issues.

24         You had served honorably.  You have no criminal

25  history.  You had gotten into a really bad situation with

1   Holmes and was working for him for a period of time.

2          So I tried really hard to try and understand why you

3   went to trial and why you testified the way you did because the

4   evidence demonstrated that what you said wasn't entirely true.

5   Some of it I am sure was true, but not the key parts of it

6   where you did go along with what he wanted to do.  And you did

7   think about yourself and money.  As small an amount of money as

8   it was, it was obviously enough at that time because you're

9   living in a car outside your mom's house and you're trying to

10  keep your daughter safe.

11         On the other hand, your daughter is in the car

12  sometimes when you're going around to different locations with

13  the victim, which put her in peril.

14         So you have got a long way to go to get your mental

15  health together, and I hope that you will work hard at it and

16  that you will take advantage of the treatment that you can get

17  in the Bureau of Prisons for mental health counseling.

18         Ten years is a long time, and that's the minimum

19  mandatory, as you pointed out, and there is a reason for it.

20  The reason is because of the victim in this case, the age of

21  the victim, the helplessness of the victim.  The fact that she

22  was so unsophisticated in what was going on.  She tried to get

23  you to share some insight, some personal insight into what was

24  going on and to help her because she knew, of course, that

25  Holmes would never help her.

13

1          And you also were in a state where you didn't offer

2    any of that help.  And you may not have even felt that she was

3    reaching out to you because of the state you were in, but she

4    was.  And you were pretty darn callous about her suffering.

5    And that's why these types of cases have such significant

6    minimum mandatory sentences.

7          I am going to sentence you to 132 months of

8    incarceration.

9          Five years of supervised release.

10          I will not impose a fine or costs.

11          A $100 special assessment will be imposed.

12          I will order that as conditions of your supervised

13   release, you receive mental health counseling and treatment,

14   and substance abuse testing and treatment to the extent the

15   Probation Office believes you may need it.

16          I will order that you register with the Adam Walsh

17   Child Protection Safety Act in any state where you reside or

18   are employed.

19          And I will order that you be on other standard

20   conditions of supervised release.

21          Is there any restitution order?  Has any been sought

22   in this case?

23          MS. LUCK:  No, Your Honor.  The victim and her family

24   don't want any further reminder of this, and so they have

25   declined to seek restitution.

14

1        THE COURT:  All right.  There will be no restitution.

2        You will be given credit for time served awaiting

3   this sentencing.

4        Do you seek a designation?

5        MR. ROBERTSON:  I do, Your Honor.  If we could keep

6   her as close to the D.C. area as we can.

7        I also neglected to seek the residential drug

8   treatment program for her.  That was indicated in the

9   presentence report, that she has had problems with drugs

10  before.

11       THE COURT:  Yeah.  All right, I will ask the Bureau

12  of Prisons to make her available for the residential drug

13  program.  And we will ask for a designation as close to

14  Washington, D.C. as possible so she can be as close to her

15  daughter as possible.

16       It's up to you.  Come on now, you can do better.  You

17  can get out and be a contributing member of your community, of

18  our community, and I hope you will work at it.

19       THE DEFENDANT:  I will.

20       THE COURT:  All right.  Thank you.

21  -------------------------------------------------
                        HEARING CONCLUDED

22
          I certify that the foregoing is a true and
23     accurate transcription of my stenographic notes.

24
                    /s/  Norman B. Linnell
25              Norman B. Linnell, RPR, CM, VCE, FCRR